UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
In re

                        Chapter 7

Raymond Dieffenbacher,

                        Case No. 12-48533 (CEC)

                       Debtor.
----------------------------------------------------------X
John S. Pereira, as Chapter 7 Trustee for the
Estate of Raymond Dieffenbacher,

                       Plaintiff,

-against-                                      Adv. Pro. No. 14-1229 (CEC)

Raymond Dieffenbacher, individually,
Irina Pichkhadze, individually and as an
officer of ERIA Inc. and ERRI Inc.,
Eduard Yagudayev, individually and as an
officer of ERIA Inc. and ERRI Inc., Egor Shay,
individually and as an officer of ERIA Inc. and
ERRI Inc., ERIA Inc. d/b/a First Choice
Pharmacy, and ERRI Inc. d/b/a First Choice
Pharmacy,

                       Defendants.

----------------------------------------------------------X

<u>DECISION</u>

APPEARANCES:

John P. Campo, Esq.
Troutman Sanders LLP
The Chrysler Building
405 Lexington Ave.
New York, New York 10174

CARLA E. CRAIG
Chief United States Bankruptcy Judge

This matter comes before the Court on the chapter 7 trustee's motion for a default judgment against Eduard Yagudayev ("Yagudayev"). The trustee seeks a money judgment of $76,200 based upon the Court's prior order holding Yagudayev in civil contempt, and imposing daily fines until that contempt is purged. The trustee also seeks a judgment for an accounting of the diminished value of the assets of two corporations in which the estate allegedly held an interest. For the following reasons, the motion is granted in part and denied in part.

## JURISDICTION

This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b), and the Eastern District of New York standing order of reference dated August 28, 1996, as amended by order dated December 5, 2012. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

## BACKGROUND

On December 18, 2012, Raymond Dieffenbacher (the "Debtor") filed a voluntary petition under chapter 7 of the Bankruptcy Code. (Case No. 12-48533-CEC, ECF No. 1.) John S. Pereira (the "Trustee") was appointed as chapter 7 trustee of the Debtor's bankruptcy estate.

On March 25, 2013, the Trustee filed six separate applications pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") seeking orders directing the production of documents from, and authorizing the examination of, the Debtor, Yagudayev, Irina Pichkhadze ("Pichkhadze"), Egor Shay ("Shay"), ERIA Inc. ("ERIA"), and ERRI Inc. ("ERRI," and, together with the Debtor, Yagudayev, Pichkhadze, Shay, and ERIA, the "Defendants"). (Case No. 12-48533-CEC, ECF Nos. 20-25.) The Trustee asserted that the Debtor held interests in ERIA and ERRI, and that Yagudayev, Pichkhadze, and Shay were officers of those companies. (Id.)

After hearings on the Trustee's motions were held on April 11, 2013, the Court issued orders on May 3, 2013, directing the production of documents requested by the Trustee and authorizing the examination of the Debtor (the "Debtor Rule 2004 Order"), Pichkhadze (the "Pichkhadze Rule 2004 Order"), Shay (the "Shay Rule 2004 Order"), ERIA (the "ERIA Rule 2004 Order"), and ERRI (the "ERRI Rule 2004 Order," and, together with the Debtor Rule 2004 Order, the Pichkhadze Rule 2004 Order, the Shay Rule 2004 Order, the ERIA Rule 2004 Order, the ERRI Rule 2004 Order, and the Yagudayev Rule 2004 Order (defined below), the "Rule 2004 Orders," and each a "Rule 2004 Order"). (Case No. 12-48533-CEC, ECF Nos. 37-41.)

On May 23, 2013, the Trustee filed an amended motion pursuant to Bankruptcy Rule 2004 seeking the production of documents from, and examination of, Yagudayev, explaining that the first motion was returned by the post office. (Case No. 12-48533-CEC, ECF No. 42.) The Trustee served the amended motion on Yagudayev at the forwarding address provided by the postal service. (Case No. 12-48533-CEC, ECF No. 43.)

On June 26, 2013, the Court issued an order authorizing the examination of Yagudayev and directing the production of documents (the "Yagudayev 2004 Order"). (Case No. 12-48533-CEC, ECF No. 45.)

None of the Defendants complied with their respective Rule 2004 Order, and on January 6, 2014, the Trustee filed motions to compel compliance. (Case No. 12-48533-CEC, ECF Nos. 53-58.) On February 4, 2014, the Debtor, Pichkhadze, and ERIA filed objections to the motions to compel. (Case No. 12-48533-CEC, ECF Nos. 71-73.)

Hearings on the Trustee's motions to compel were held on February 11, 2014. On February 28, 2014, the Court issued an order directing the Debtor to comply with the Debtor Rule 2004 Order (Case No. 12-48533-CEC, ECF No. 74), and on March 3, 2014, the Court

issued separate orders directing Pichkhadze, ERIA, ERRI, Shay, and Yagudayev to comply with their respective Rule 2004 Order (Case No. 12-48533-CEC, ECF Nos. 75-79) (each, an "Order to Compel").  The Court also found each Defendant in civil contempt, and authorized the Trustee to submit orders providing for contempt sanctions in the event the Defendants did not cure their non-compliance.  (Case No. 12-48533-CEC, ECF Nos. 74-79.)

On April 24, 2014, the Court issued orders finding each of the Defendants in civil contempt for violating their respective Rule 2004 Order and Order to Compel, and imposed fines on each of the Defendants of $100 per day for each day until the demanded documents were produced, and imposed fines on Yagudayev and Shay of $100 per day until the Trustee was contacted to reschedule an examination under Bankruptcy Rule 2004 (the "Sanctions Orders").[1]  (Case No. 12-48533-CEC, ECF Nos. 80-85).

On December 18, 2014, almost eight months after the Sanctions Orders were issued, the Trustee commenced this adversary proceeding against the Defendants alleging that the Defendants failed to produce the demanded documents or contact him to reschedule examinations.  The Trustee sought money judgments totaling $202,900 for the contempt sanctions that accrued under the Sanctions Orders.  (Compl. ¶¶ 29, 31, Adv. Pro. No. 14-1229-CEC, ECF No. 1.) The complaint also sought a declaratory judgment that ERRI and ERIA were alter-egos of the Debtor, and as such, the corporations' assets were property of the estate.  (Compl. ¶ 37, Adv. Pro. No. 14-1229-CEC, ECF No. 1.)  The complaint further asserted claims of conversion and unjust enrichment against the Defendants based upon the estate's alleged

---

[1] The sanctions ERRI were imposed as of March 11, 2014. (Case No. 12-48533-CEC, ECF No. 82.) The sanctions against the Debtor, Pichkhadze, and ERIA were imposed as of March 4, 2014. (Case No. 12-48533-CEC, ECF Nos. 80, 81, 83.)  The sanctions against Yagudayev and Shay for failing to produce documents were imposed as of March 11, 2014, and sanctions for failing to contact the trustee to reschedule the examination under Rule 2004 were imposed as of March 19, 2014.  (Case No. 12-48533-CEC, ECF Nos. 84-85.)

interest in ERRI and ERIA, and sought an accounting from the Defendants with respect to the diminished value of the corporate assets. (Compl. ¶¶ 38-44, Adv. Pro. No. 14-1229-CEC, ECF No. 1.)

The Court noted the Defendants' default at the first scheduled pre-trial conference on January 22, 2015, based upon their failure to file answers or otherwise appear.

On April 3, 2015, the Trustee filed a motion for default judgments against Shay and Yagudayev seeking money judgments against each for $76,200 for contempt sanctions that accrued under the Sanctions Orders through March 31, 2015. (Adv. Pro. No. 14-1229-CEC, ECF No. 13.) The Trustee also sought a default judgment for an accounting of diminished value of ERRI and ERIA's assets. (Adv. Pro. No. 14-1229-CEC, ECF No. 13.) Neither Shay nor Yagudayev responded to the motion.

On January 26, 2016, the Trustee filed a motion pursuant to Bankruptcy Rule 9019 seeking approval of a settlement with the Debtor, Pichkhadze, ERIA, and ERRI (together, the "Settling Defendants"). (Adv. Pro. No. 14-1229-CEC, ECF No. 21.) Pursuant to the settlement, the Settling Defendants paid the estate $30,000 in full satisfaction of the claims asserted in the Complaint. (Adv. Pro. No. 14-1229-CEC, ECF No. 21.) After notice and a hearing, the settlement was approved by order dated February 26, 2016. (Adv. Pro. No. 14-1229-CEC, ECF No. 24.)

On March 3, 2016, after further investigation revealed that Shay was not an officer of ERRI or ERIA, the Trustee withdrew his motion for a default judgment against Shay.[2] (Adv. Pro. No. 14-1229-CEC, ECF Nos. 25, 26.)

---

[2] The Trustee stated that he will seek dismissal of the action against Shay, but has not yet done so. (Campo Aff. ¶ 7, Adv. Pro. No. 14-1229-CEC, ECF No. 25.)

## **LEGAL STANDARD**

Bankruptcy Rule 2004 allows the Court, "on motion of any party in interest" to "order the examination of any entity." Fed. R. Bankr. P. 2004(a). "Rule 2004 discovery is broader than discovery under the Federal Rules of Civil Procedure, and has fewer procedural safeguards. It can be legitimately compared to a fishing expedition." In re Drexel Burnham Lambert Grp., Inc., 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991). "The purpose of such a broad discovery tool is to assist the trustee in revealing the nature and extent of the estate; ascertaining assets; and discovering whether any wrongdoing has occurred." In re Corso, 328 B.R. 375, 383 (E.D.N.Y. 2005).

The bankruptcy court may hold a person or entity in civil contempt for failing to comply with an order, such as an order issued pursuant to Bankruptcy Rule 2004. See Mar. Asbestosis Legal Clinic v. LTV Steel Co. (In re Chateaugay Corp.), 920 F.2d 183, 187 (2d Cir. 1990); Stockschlaeder & McDonald, Esqs. v. Kittay (In re Stockbridge Funding Corp.), 158 B.R. 914, 917 (S.D.N.Y. 1993); Cohen v. Doyaga, No. 00-CV-2090 (FB), 2001 WL 257828, at *3 (E.D.N.Y. 2001). This power is "a necessary and integral part of the independence of the judiciary, and is absolutely essential to the performance of the duties imposed on them by law." United States v. Rangolan, 464 F.3d 321, 324 (2d Cir. 2006) (quoting Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 450 (1911)).

Civil contempt sanctions may be imposed "'for either or both of two purposes: to coerce [a party] into compliance with the court's order, and to compensate the complainant for losses sustained.'" Local 28 of the Sheet Metal Workers' Int'l Ass'n v. EEOC, 478 U.S. 421, 443 (1986) (quoting United States v. Mine Workers, 330 U.S. 258, 302 (1947)). "[C]ivil contempt sanctions, or those penalties designed to compel future compliance with a court order, are

considered to be coercive and avoidable through obedience, and thus may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard." Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 827 (1994). However, criminal contempt sanctions, unlike civil contempt sanctions, are "punitive, to vindicate the authority of the court." Id. at 828.

## DISCUSSION

### I. Monetary Judgment for Civil Contempt Sanctions

As stated above, the Trustee is seeking a monetary judgment of $76,200 against Yagudayev pursuant to the Sanctions Order for Yagudayev's failure to appear for a Rule 2004 examination and produce demanded documents. Although this amount is based upon a mathematical calculation of the sanctions that accrued under the Sanctions Order through March 31, 2015,[3] when viewed in the context of this case, the amount sought is excessive.

The claims register reflects that, at the time the Trustee commenced this adversary proceeding, the claims filed against the estate totaled $81,987.32. The largest claim was held by Angella Aminov, the Debtor's ex-wife, for domestic support obligations of $78,590. (Case No. 12-48533-CEC, Claim No. 3). On May 1, 2015, during the pendency of this motion, Ms. Aminov withdrew her claim against the estate. (Case No. 12-48533-CEC, ECF No. 98.) As a result, claims against the estate total $3,397.32.[4]

The Trustee has settled his claims against the Debtor, Pichkhadze, ERRI, and ERIA for $30,000, and there is between $40,000 and $50,000 in the estate's account. (Tr.[5] at 15.) At the hearing on this motion, the Trustee's counsel stated that the estate has incurred in excess of $100,000 in legal fees in pursuit of the Defendants based upon their noncompliance with the

---

[3] This motion was filed on April 3, 2015.
[4] The deadline to file claims expired on October 16, 2014.
[5] "Tr." refers to the transcript of the hearing held on May 19, 2016.

Rule 2004 Orders and the Orders to Compel, but that the Trustee would not "take the entire amount of an estate for . . . chapter 7 administrative expenses." (Tr. at 11.) It is therefore assumed that the minimal unsecured claims against the estate will be paid in full, and the balance will be used to pay approved statutory commissions and professional fees.[6]  In other words, practically all of the estate's funds, including any funds received after enforcing, or selling, a money judgment against Yagudayev, will be used to pay the attorney's fees and costs incurred in pursuing the Settling Defendants, Shay, and Yagudayev.

"Federal courts have broad discretion to fashion remedies as equity requires, to ensure compliance with their orders." Cordius Trust v. Kummerfeld Assocs., 658 F. Supp. 2d 512, 524 (S.D.N.Y. 2009) (citing United States v. Visa U.S.A., Inc., No. 98 Civ. 7076 (BSJ), 2007 WL 1741885, at *3 (S.D.N.Y. June 15, 2007)).  In this case, a judgment of $76,000 against Yagudayev as a contempt sanction, in a case where the unsecured claims are less than $3,500, is excessive and "is more than needed to remedy the situation." Zerman v. Jacobs, 814 F.2d 107, 109 (2d Cir. 1987).  Indeed, a judgment of $76,200 against Yagudayev could be viewed as a punitive sanction, instead of a civil sanction. See In re Brown, No. 10-94467-E-7, 2014 WL 2881176, at *6 (Bankr. E.D. Cal. June 23, 2014) (reducing the sanction against a defendant for failing to turn over property of the estate to the trustee from $136,500 to $13,650 because, "[t]hough entirely of his own making, such amount could be incorrectly construed as having passed from being corrective to being punitive.").

To be clear, this decision in no way condones Yagudayev's failure to comply with unambiguous orders of this Court.  However, based upon the circumstances of this case, an appropriate sanction against Yagudayev is the amount necessary to compensate the estate for

---

[6] The Debtor would be entitled to any surplus funds. 11 U.S.C. § 727(a)(6).

8

reasonable attorney's fees and costs incurred as a result of his contempt. See New York State Nat'l Org. for Women v. Terry, 159 F.3d 86, 96 (2d Cir. 1998) (a contemnor may be liable for the reasonable attorneys' fees and costs incurred by the party prosecuting the contempt). At a hearing held on March 22, 2016, the Court inquired as to the amount of fees incurred as a result of the contempt. On May 20, 2016, the Trustee's counsel filed an affirmation stating that "[t]he Trustee has incurred total legal fees well in excess of $76,200" in connection with the "motions for the 2004 examinations and contempt, the filing of the adversary proceeding, and the motion for default judgment." (Campo Aff. ¶ 7, Adv. Pro. No. 14-1229-CEC, ECF No. 28.) Yagudayev, as one of six defendants, is not responsible for the entire amount of legal fees incurred as a result of all of the Defendants' contempt. Therefore, the maximum amount that will be awarded as sanctions against Yagudayev is an amount equal to the reasonable attorney's fees and costs incurred as a result of Yagudayev's contempt.

    II.    Claims Relating to the Estate's Interest in ERRI and ERIA

The settlement with ERRI and ERIA was approved during the pendency of this motion for a default judgment against Yagudayev. The Trustee has not withdrawn this motion with respect to the claims against Yagudayev for conversion, unjust enrichment, and for an accounting, and therefore those claims must be addressed.

The complaint alleges that the Debtor owns interests in ERRI and ERIA, and that "[t]he Debtor, whether solely or in conjunction with other . . . Defendants, exercises dominion and control over ERIA [and] ERRI relating to every aspect of their respective business." (Compl. ¶ 36, Adv. Pro. No. 14-1229-CEC, ECF No. 1.) Based upon these allegations, the Trustee sought a declaratory judgment that ERRI and ERIA are alter-egos of the Debtor, and that any property held by ERRI and ERIA is property of the estate. (Compl. ¶ 37, Adv. Pro. No. 14-1229-CEC,

ECF No. 1.) The Trustee further alleged that Yagudayev wrongfully converted corporate assets, and that Yagudayev was unjustly enriched at the expense of the Debtor's estate. (Compl. ¶¶ 39, 42-43, Adv. Pro. No. 14-1229-CEC, ECF No. 1.). A default judgment on these claims must be denied.

"A corporation has a separate identity from its owners and, therefore, assets held by corporate entities are not property of an individual shareholder's bankruptcy estate." Pryor v. D'Alessio (In re D'Alessio), Case No. 8-08-72819-REG, Adv. Pro. Nos. 8-10-08187-REG and 8-12-08095-REG, 2014 WL 201871, at *9 (Bankr. E.D.N.Y. Jan. 17, 2014) (citing cases). Rather, the ownership interest is property of the shareholder's bankruptcy estate. Id. In order to include a corporation's assets into a shareholder's bankruptcy estate, it is necessary to reverse pierce the corporate veil. Id.

"Typically, piercing analysis is used to hold individuals liable for the actions of a corporation they control. However, New York law recognizes 'reverse' piercing, which, as here, seeks to hold a corporation accountable for actions of its shareholders." Am. Fuel Corp. v. Utah Energy Dev. Co., Inc., 122 F.3d 130, 134 (2d Cir. 1997). The analysis is identical for both forms of piercing. D'Alessio, 2014 WL 201871, at *8. "New York law requires the party seeking to pierce a corporate veil to make a two-part showing: (i) that the owner exercised complete domination over the corporation with respect to the transaction at issue; and (ii) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." Am. Fuel Corp., 122 F.3d at 134. "The critical question is whether the corporation is a 'shell' being used by the individual shareowners to advance their own 'purely personal rather than corporate ends.'" Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc., 933 F.2d

131, 138 (2d Cir. 1991) (quoting Port Chester Elec. Constr. Corp. v. Atlas, 40 N.Y.2d 652, 656–57 (1976)).

The Trustee has settled his claims with respect to the estate's ownership interest in ERRI and ERIA.  No determination has been made with respect to piercing the corporate veils of those corporations, or whether the corporate assets are property of the estate.  It is therefore improper to grant a default judgment against Yagudayev for conversion of corporate assets and unjust enrichment, or to direct an accounting of the value of those asserts.  A default judgment on these claims is also unwarranted because the complaint does not allege that ERRI and ERRI were mere corporate shells that advanced the Debtor's personal interests, and therefore the Trustee has not alleged a prima facie claim for piercing the corporate veil.  See Rolls-Royce PLC v. Rolls-Royce USA, Inc., 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) ("[I]t remains the court's responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief.")

## CONCLUSION

For the foregoing reasons, the Trustee is directed to settle a judgment awarding the attorney's fees and costs incurred with respect to Yagudayev's contempt, together with an affidavit and time records in support thereof.  The Trustee's submission should show all of the fees incurred with respect to all defendants, and include a calculation showing how the fees attributable to Yagudayev are calculated.  The Trustee's motion for a default judgment on the claims against Yagudayev for conversion and unjust enrichment, and for an accounting, is denied.  A separate order will issue.

**Dated: Brooklyn, New York**
**August 29, 2016**

_____
**Carla E. Craig**
**United States Bankruptcy Judge**